Thank you very much, Your Honor. Again, my name is Nancy Crear, Special Assistant Attorney General on behalf of the State's State Defendant. With me today is Linda Dalton of the Attorney General's Office. As noted, this is the State's emergency motion that that part of the District Court decision regarding RCW 4217-105 subsection 8 be stayed while the significant issues that are on appeal be resolved by this Court. The reason for the emergency motion is the 21-day period that is referenced in that statute begins October 12th, and the State and the country is heading into a general election on November 2nd. The reasons that the State asks for the stay and believes it satisfies the criteria for the stay are outlined in both the State's motion and its response. Essentially, the State satisfies these four criteria. It is likely to succeed on the merits. It will suffer irreparable harm in the absence of relief. The balance of equity is tipped sharply in the State's favor, and it stays in the public interest. Judge Fletcher, for the purpose of this question, assume that as to the first factor, that is, the likelihood of your success on appeal, I'm neutral. That is to say, I'm totally 50-50. If that is the case, how do you fare on the other factors, and do you still prevail? Yes, we do, Your Honor. Tell me why, please. Certainly. If we look at suffering irreparable harm, for example, just moving directly to the second statute, we have a statute that has been in effect since 1985 and is well-known by campaigns. The campaigns that are in effect now, including all of the ballot measure campaigns, have been putting their plans in place for the various timing provisions in the State Code, including 4617-1058. If the district court decision is not stayed and funds are contributed in contravention of that statute, and this court ultimately rules, as we think it should, that the district court errs, there will be no way to un-contribute those funds. The public interest in having its laws in place for this November 2nd election will have been thwarted with no means to repair the damage while the case is on appeal, and we've provided the declaration of Interim Executive Director Doug Ellis attesting to that. So the committees that have put plans in place, the voters that are expecting to receive certain information at certain times, particularly in this vote-by-mail era where 38 of 39 counties are voting, will have all been impeded, even though the district court's decision may be overturned. In fact, as of today, the Public Disclosure Commission's website shows that money continues to pour into these ballot measure campaigns, more than $44 million as of this morning. So it indicates that, in fact, there will not be harm to any of the fundraising efforts if the district court's decision is stayed, while this court has the opportunity to deliberate in all due course the significant issues that are on appeal. But then turning then to balance of equity, tipping sharply in favor of a stay, as has been briefed and is undivided in the record, family tax has engaged in no contribution activities, no expenditure activities. Its sole report is a piece of paper showing it was organized last October 2009. So contrast family tax, no activities, in fact, 4217-1058 operated as no barrier for them, no amicus. Let me, again, this is Judge Fletcher, just interrupt. I want to make sure I understand what you're saying, and Family PAC can obviously disagree upon the facts. They do disagree with you. My understanding is that Family PAC, in the current election, has no dog in the fight. That is to say, they're not saying that they wish to contribute money in this last 21-day period in excess of $5,000. Not only not in the current election, Your Honor, not in the 2009 election either. The fact that there is no dog in this fight, there's no indication that there is going to be a dog in the fight by them, particularly for the November 2nd election. Well, that's my question. There's nothing in the current record that tells us that they have some dog in the fight in the election that's upcoming right now. That's correct, Your Honor. They can contradict that then. Okay, I understand what you're saying. Yes, and, in fact, when you look at the real active political committees that are actively contributing and engaged in the campaigns in Washington State, none of them came forward as amicus to support Family PAC below. None of them joined as a party. No ballot manager or other committee came forward to say that they agreed with Family PAC's argument. And, in fact, Family PAC never appealed from the denial of the preliminary injunction last fall. So Family PAC's interest appears to be hypothetical or academic at best. And when you balance that against the real campaigns and the real ballot measure committees that are really active, the people who pass this law that's being challenged and the campaigns that are operating pursuant to it and the voters are entitled to have their orderly campaign finance system in place. All of these facts, Family PAC disregards in its briefing, which leads to the fourth criteria as to why this stays in the public interest. As has also been briefed and explained, in Washington State now, 38 of 39 counties vote by mail. And then you add to that military votes and overseas ballots. And those ballots will begin being mailed, the majority of them, October 3rd. And they're otherwise available October 13th through 15th. So in 38 of 39 counties, unlike sort of a traditional notion, if you will, of people going to the polls, only one county still uses a polling mechanism and people will begin voting during... How does that cut one way or the other on the public interest question? Well, because one of the things that 4217.105 subsection 8 provides to those voters is the information on who are the big vendors, the big contributors, excuse me, in the ballot measure campaigns. And that is the type of information... But, Nellis, I understand the provision that's being challenged. It's not an informational. It's just a flat-out bar. If somebody wants to contribute more than $5,000 in this last 21-day period, they can't do it, period. Well, we would vigorously disagree, and we think the district court erred in analyzing the statute in that way. Isn't that true? Isn't that what the statute says? What the statute says is that in the 21-day period that you can contribute up to the $5,000, but in the period prior to that, there are, in fact, no... Well, then that's exactly what I said, is to say in the 21-day period, no one except for a political party, an individual or a company, no one can contribute more than $5,000, period. Well, it's a timing provision, Your Honor. Well, that's exactly right. But you talked about information available as to who's giving money. That's a different question than giving money. So if somebody wants to give money, say $6,000, inside the 21-day period, the state is not prevented from supplying the information as to who gave that money. But what we have pointed out to the district court is the voters who are actually voting are entitled to have the information when they're casting their ballot. And in this modern day and age, the casting of the ballot begins in October. It does not occur primarily on November 2nd anymore. Those days have passed. And when you look at, for example, if I may, 42-17-370 subsection 1, that's a statute that says the Public Disclosure Commission itself cannot put new rules, new campaign finance rules into place after June 30th. The reason being that you don't want to change the rules of the road and upset the apple cart prior to the election, which is exactly what the district court's decision calls for. And, frankly, in looking at a decision of this morning out of Maine, Respect Maine PAC versus Walter McKee, there the First Circuit declined to what they described as putting chaos that will ensue right before an election in the request to invalidate laws that have been in place since 1996. Ms. Kruger, do you have a cite to that Maine case? It just came out, Your Honor. It is Respect Maine PAC v. Walter McKee, and it is First Circuit Court of Appeals number 10-2119. Very well. I've got a question. Are we talking about a campaign contribution limit or a disclosure limit in terms of the specific issue in this case? We do not believe it operates as a contribution limit, Your Honor, because there is no limit in place. It is a timing provision, and by having that timing provision in place, it enables disclosure of who are the large contributors at a time when Washington state voters are actually receiving their ballots. But if you were to allow the district court order to take immediate effect, what would be the impact as between disclosure and campaign contribution limit? Well, one of the things we would have to do immediately is to, you know, look at the kind of questions that we've been receiving from campaigns, from attorneys, and from others, and what we would probably have to tell them is there is no, you know, depending on what this court says, obviously, that there is no $5,000 21-day provision in effect with respect to ballot management. Now there's some nuances to that that we would have to analyze. And this is the very point, Your Honor, is the reason you don't sort of make up the rules of the game, right before an election, is these are issues and questions and answers that campaigns need well before the November election. And if you look at the language of Pilate, that the state's interest in preserving the integrity of the electoral process is of the highest importance. And you look, for example, as noted, the main analysis that retaining the public interest in maintaining the status quo during the period of the appellate court's deliberation tips the interest sharply in favor of having it stay while the significant issues presented by the district court decision are fully aired by this court. Thank you, Ms. Crear. I believe your 10 minutes have expired. Sure. We will hear from Mr. Bieniek, please. Good evening, Your Honors, and thank you for the opportunity. Scott Bieniek on behalf of Family PAC and the law firm of Bob Colson and Bostrom. As you are well aware, we are here today on the state's appeal and specifically their motion for a stay of the district court's order granting summary judgment in favor of Family PAC with respect to the $5,000 contribution limit during the 21 days before a general election. As the state correctly noted, that 21-day window has not begun. I believe that the McKee case that the state just cited involved a public funding scheme, if I'm not mistaken, which is actually currently in operation and funds have been distributed. That is unlike the present situation where this 21-day window has not, in fact, begun. I believe that reviewing the transcript of the temporary restraining order, that was a critical factor in the district court's decision when he denied the motion for TRO and PI before the November 2009 election. The state is correct to note that Family PAC did not appeal that decision. That decision was handed down seven days before the election. It was not feasible to file an appeal within that window and ask the Ninth Circuit to act that quickly. You heard Ms. Krier say that your client, that is the Family PAC, doesn't have a dog in this fight. What's your response? How is your individual client, as opposed to, let's say, a general category of all contributors, how does your own individual client become injured here in this case? Family PAC in their verified complaint averted that they not only wanted to receive contributions and solicit contributions in excess of $5,000 prior to the November 2009 election, but they stated that they would like to do so in future elections on policy issues that are consistent with their goals. How about this election? Well, this election, that 21-day window, has not yet begun. My client said that at this point they have not made a decision to get involved and have not foreclosed that possibility. Judge Fletcher has a question. I'm afraid you're talking so loud you can't hear the question. I think you understood the question, but you didn't answer it. Is there anything in your papers that says that your client wishes either to contribute or to receive money in the 21-day period preceding this election? Not in the present papers beyond the verified complaint wherein they stated that they would like to solicit and receive contributions in excess of $5,000. For what period? For future elections on issues that are consistent with their goals as an organization. Maybe there's a problem with the telephone. You keep talking over me. I think I understand it, then, that as to this election, there's nothing in this record that tells us that your client wants to receive or give contributions in excess of $5,000 in this 21-day period. Is that correct? That would be correct with the caveat that this motion for summary judgment was briefed early in the 2010 election cycle before many of the current ballot measures and initiatives that have qualified for the ballot have actually qualified. It would have been sort of premature for my client to state that they would like to make a contribution during the 21 days before, say, the I-1098 election, which my client is contemplating. That would be the income tax initiative in the state of Washington earlier this year. So, I mean, based on the timing of the briefing, this was not briefed during the heat of the political campaign. And I call the Court's attention back to Citizens United  But you are not, as most individuals, you are an experienced lawyer and your client is an experienced litigant with a sustained interest. And there's nothing that you've done to try to show us that in the period, at any period during this time, that actually you guys have an interest in accepting or contributing in excess of $5,000 in the current election. Well, it would have been speculative in January to say that FamilyPact was going to raise funds in excess of $5,000 prior to the 2010 general election on behalf of ballot managers in an initiative that had not yet qualified for the ballot. Mr. Van Yak, Judge Fletcher is trying to ask a question. I'm afraid you're talking over him. So, if you don't mind, please try to be attuned to the questions that may be coming. Judge Fletcher. Yeah, this is so extreme I have a feeling it's not you personally. There must be something wrong with the telephone system that you can't hear me ask the questions. You say it's speculative. I think I'll abandon the point because there's nothing you've so far been able to tell me that gives me any indication whatsoever that I should think that your client wishes to accept or receive in excess of $5,000 in the next 21 days, in the 21-day period of this election. There is nothing in the record to that point. I can tell you that I've had conversations with my client that suggest that they may get involved in the I-1098 election. Okay, thank you. But I go back to the state factors, and the state factors are, and the state bears the burden in meeting those, and there are four, and we believe that they cannot get past the first, which is a strong showing that they are likely to succeed on the merits of the appeal. Let me ask you this if I may. Again, this is Judge Fletcher. Assume that they cannot make a strong showing, at least according to me, and that I am in equipoise, that is to say I have simply not made up my mind at this point. Does that mean they automatically lose their application for a stay? No. It is my job to convince you that they are unlikely to succeed on the merits of the appeal. No, I understand that, but what I'm asking you is is it a sine qua non or is it just one of four factors and they might prevail if they are able to make a strong enough showing on the other factors? It is a sine qua non. If you reach a decision with respect to the first factor, then it is unnecessary for the court to reach factors two through four. And I'll refer back to Doe v. Reed handed down last fall, wherein the Supreme Court, I mean the Ninth Circuit, I'm sorry, stopped with respect to the first factor on an appeal from a PI and said that because the plaintiff in that case was unlikely to show a likelihood of success on the merits, that it was unnecessary for the court to reach factors two through four. Counsel, are you familiar with our case, Golden Gate Restaurant Association v. San Francisco? Yes, Your Honor, and that was a case handed down before winter and the state factors mirror the PI factors. And I would suggest that winter holds that all four are a requirement for injunctive relief or in this case a stay to issue. That is, it is an extraordinary remedy and all four are prerequisites before the relief may be granted. Well, here's my problem, Mr. Paniak. There's a passage in that case that says that the factors represent a sliding scale and even failing a strong likelihood of success on the merits, the party seeking a stay may be entitled to prevail if it can demonstrate a substantial case on the merits and the second and fourth factors militate in its favor. That's the law of our circuit at the moment, as I understand it, unless you disagree. Well, again, I go back to winter and I think that that sliding scale standard, if I may, was sort of the issue that was at issue in winter. But more specifically, I don't think that the stay here could make their showing with respect to factors two and four. Specifically here, the harm to the public is simply more speech about a ballot measure to which a valid and enforceable disclosure provision will apply. Within 24 hours, a donor of more than $5,000 is required to file a report with the Public Disclosure Commission. And the record in this case illustrated that that information is available within hours on the Public Disclosure Commission's website. You know, on the question of winter and so on, this is slightly unfair in the sense that I think you're not prepared on this point. There's a fairly recent opinion out of this circuit, Wild Rockies v. Cottrell, that joins the Seventh Circuit and the Second Circuit in saying that serious questions on the merits and balance of hardships tipping sharply in the favor still survives. The three circuits are now in agreement that that part survives winter. And that tracks, I'm afraid, Golden Gate. I understand, Your Honor, and I would refer back. Again, I would posit that the state cannot meet factors two and four. And again, specifically the harm to the public here, which would be more speech followed by disclosure, timely disclosure, 24-hour reporting by the donor, and 48-hour reporting by the committee. What do you make of the argument that the state makes, and I find at least plausible, that the state has an interest in avoiding disruption and chaos. I mean, everybody has been planning up until very recently, they're just going to follow the statute. And people make their plans. Sophisticated donors and sophisticated campaigners make their plans based on the statute. And all of a sudden, the ground rules are changed in a very short period before the election. Well, I'll turn first to Stiffen against rent control, which we believe is controlling in this case, in which the court there enjoined the ballot measure contribution limit just 14 days before the election, something that obviously was much closer in time to the present election and would have been sort of in the heat of the campaign as the Supreme Court spoke in Citizens United. I would also point out that the First Amendment protects the rich and the poor, sort of the political and apolitical, and that the current regime would seem to favor the organizations that have sponsored these referenda and have been involved in the political campaign from the beginning and prevent individuals from responding to the message sort of in the heat of the campaign, as the Supreme Court spoke in Citizens United. Sort of at the very point that everybody's attention is focused on a ballot measure is the very time that this provision kicks in and prohibits everyday citizens from getting involved and associating in a way that they can actually and effectively combat what the state actually mentioned here in argument, some $44 million. Excuse me, you've got a somewhat unusual definition of everyday citizens. In my experience, most everyday citizens don't have more than $5,000 to contribute to a campaign. But this prohibits even a group of citizens from coming together, even slightly above average citizens who care deeply about this measure or disagree with a message that's being committed about an initiative during the heat of a campaign, from associating to combat the sort of well-funded $44 million worth of funding that's already been poured into these campaigns before this period. There's simply no effective way for them to get involved at this point if their funding, they're prohibited from responding to a campaign that has millions of dollars in the bank without the ability to seek donors that can contribute more than $5,000. Mr. Vianyak, your time has expired. Unless, Judge Fletcher, you have a further question for either side, I believe that this motion will be submitted. And we are aware of the deadline that you've asked us to rule within, and that's tomorrow. And we will do our very best to comply with that request. And I have no further questions, Judge O'Scanlon. Very well. The motion is submitted, and the court will adjourn. Thank you, counsel. Thank you.
judges: O'scannllain, W. Fletcher